UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATTI KENT,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

No. 2:16-cv-01136 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born July 5, 1962, applied on April 30, 2012 for SSI, alleging disability beginning June 1, 2011. Administrative Transcript ("AT") 90. Plaintiff alleged she was unable to work due to severe anxiety and depression, Hepatitis C, degenerative disk disease, arthritis, fused vertebrae, and torn discs. AT 90. In a decision dated January 30, 2014, the ALJ

////

determined that plaintiff was not disabled.[1] AT 120-135. The Appeals Council granted plaintiff's request for review and remanded for another hearing and decision. AT 136-140. At the second hearing in November 2015, the ALJ took testimony from plaintiff and a vocational expert. AT 57-87. In his January 2016 decision (AT 14-33), the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since April 30, 2012, the application date.
>
> 2. The claimant has the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease (COPD), and affective disorder.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work. Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; she could six for six hours out of an eight-hour workday; she could stand and/or walk for six hours out of an eight-hour workday; she could frequently climb ramps and stairs and stoop; she could occasionally climb ladders, ropes, or scaffolds; she could occasionally reach overhead; she is to avoid all exposure to extreme cold, fumes, dusts, gases, poor ventilation, and hazards; and she is limited to simple unskilled nonpublic work with occasional interaction with coworkers.
>
> 5. The claimant has no past relevant work.
>
> 6. The claimant was born on July 5, 1962, which is defined as a younger individual age 18-49 on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.
>
> 7. The claimant has a limited education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since April 30, 2012**,** the date the application was filed.

AT 19-29.

<u>ISSUES PRESENTED</u>

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) in determining whether plaintiff had a listed mental impairment, the ALJ failed to provide clear and convincing reasons for rejecting the opinions of plaintiff's treating doctors; and (2) the ALJ erred by not including the vocational hypothetical limitations noted by doctors on whose opinions he relied.

////

////

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Functional Limitations

In step three, the ALJ found that plaintiff did not meet or equal a listing for mental health impairments based on his application of the "special technique," described below. Plaintiff argues that, in applying this technique, the ALJ failed to provide clear and convincing reasons for rejecting the opinions of plaintiff's treating doctors.

////

When the plaintiff claims a mental impairment, the ALJ is required to follow a "special technique" at Steps Two and Three, to evaluate the plaintiff's disability. 20 C.F.R. § 419.920a(a). At Step Two, the ALJ first evaluates plaintiff's "pertinent symptoms, signs, and laboratory findings" to determine whether plaintiff has "a medically determinable mental impairment(s)." 20 C.F.R. § 419.920a(b)(1); Keyser v. Commissioner, 648 F.3d 721, 725 (9th Cir. 2011) (interpreting 20 C.F.R. § 1520a, the parallel, and identically worded, regulation under Title II). Second, the ALJ rates "the degree of functional limitation" caused by the mental impairments just identified, in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(b)(2) & (c)(1)-(3). The degrees can be "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 416.920a(c) (4). Episodes of decompensation are ranked "none," "one or two," "three," and "four or more." Id. Third, the ALJ determines the severity of the mental impairment, "in part based on the degree of functional limitation." 20 C.F.R. § 416.920, subpt. P

The ALJ proceeds to Step Three only if the mental impairment is "severe." Keyser, 648 F.3d at 725. At Step Three, the ALJ must determine if the severe mental impairment identified in Step Two meets or equals the severity of a mental impairment in the Listings. 20 C.F.R. § 416.920a(d)(2); Keyser, 648 F.3d at 725. If it does not, the ALJ goes on to Step Four, returning to the sequential analysis.

Here, the ALJ found plaintiff to be mildly limited in the functional area of daily living, as she was "capable of performing numerous adaptive activities . . . . effectively, and on a sustained basis despite her alleged mental impairment." AT 20. The ALJ noted plaintiff's testimony that she lived alone, changed sheets, shopped with her son, and watered plants. AT 20. He noted her statements to Dr. Jonathan Schwartz in 2010 that she dressed herself and performed her own hygiene. AT 20, 305. The ALJ also cited plaintiff's 2010 statements to consultative examiner Amy Eargle that she spent her days playing with her cats and prepared her own microwave meals. AT 20-21, 299. Finally, he cited plaintiff's statements to Dr. Timothy Canty in 2013 that she handled her own chores and interacted with her dog. AT 20, 515.

////

As to social functioning, the ALJ found plaintiff moderately limited, citing her ability to shop, talk to her children on Facebook, socialize with friends, and testify on her own behalf. AT 21. The ALJ accommodated this factor by limiting plaintiff to no interaction with the general public and occasional contact with coworkers. AT 21. Plaintiff asserts that the ALJ did not consider the opinion of plaintiff's treating doctors at Kaiser and the county's Primary Care Clinic (PCC), who saw plaintiff between 2010 and 2014 and diagnosed her with various mental impairments, including anxiety, depression, bipolar disorder, and post-traumatic stress disorder. AT 437-438, 501. However, plaintiff cites no medical evidence showing that her impairments were so severe as to be presumptively disabling.

As to the third functional area – concentration, persistence, or pace – the ALJ also found plaintiff moderately limited. The ALJ cited plaintiff's ability to listen and respond appropriately during the hearing, live alone, play on the computer, make doctor's appointments, and watch television as indicia of her ability to concentrate. AT 21. The ALJ accommodated this factor by limiting plaintiff to simple and repetitive tasks. AT 21. Plaintiff asserts that the ALJ did not consider PCC and Kaiser physicians' notes concerning plaintiff's "racing thoughts, decreased concentration, decreased energy, and crying spells." (ECF No. 15-1.) Again, however, plaintiff does not address the ALJ's analysis of this functional area and points to no medical evidence that her impairments in this area were presumptively disabling.

As to the fourth functional area, decompensation, the ALJ found "no evidence in the record which would suggest that" plaintiff experienced extended episodes of decompensation. AT 21. Plaintiff refers generally to Kaiser findings concerning plaintiff's medication, including side effects and intolerance of multiple medications. (ECF No. 15-1 at 12.) However, she cites no medical opinions finding significant limitations in this functional area.

Here, the medical evidence bearing on plaintiff's limitations is susceptible to more than one rational interpretation, and the ALJ's findings are reasonably drawn from the record. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

////

////

B. <u>Vocational Limitations</u>

At the hearing on remand, the ALJ asked vocational expert Dr. Alan Cummings to identify jobs plaintiff could perform, subject to certain hypothetical physical and mental limitations. AT 80-84. In one such hypothetical, the ALJ asked Dr. Cummings what jobs plaintiff could perform if she could

> lift 20 pounds occasionally, 10 pounds frequently; sit/stand/walk six out of eight; postural limitations are all occasional; kneeling is frequent; avoid ladders/heights/operating heavy machinery and manipulation, I define that as fine manipulation, is only occasional. And . . . only occasional overhead reaching.

AT 81. Mentally, plaintiff would be limited to "simple/unskilled/non-public work with only occasional fellow employee contact." AT 80-81.

Dr. Cummings stated that, given the above impairments, "there would be no jobs." AT 81. The ALJ then revised the hypothetical to allow for fine manipulation. AT 81. Under those circumstances, Dr. Cummings testified, certain jobs would be available for plaintiff. AT 80-81.

In determining residual functional capacity, the ALJ gave "significant weight" to the opinion of Dr. Christine Fernando, who saw plaintiff in 2012 for a consultative examination and who determined that she had several physical limitations, e.g., postural restrictions, a need to avoid climbing ladders, and had occasional manipulative limitations. AT 27, 461. The ALJ also gave "great weight" to the opinions of Dr. Eargle and Dr. Canty, whose assessments were "based on in-person examinations, well-supported by objective, medically acceptable clinical and laboratory diagnostic techniques," cited specific facts, "and are largely consistent with the record as a whole." AT 27.

Plaintiff argues that, in questioning the vocational expert, the ALJ failed to include certain limitations noted by Dr. Eargle. Specifically, plaintiff cites Dr. Eargle's assessment that she could not interact with coworkers appropriately, could not consistently perform work activities "without additional instruction or support," and could not maintain regular attendance. AT 303. However, the ALJ was not required to accept wholesale Dr. Eargle's opinion of plaintiff's limitations. <u>See</u> <u>Batson v. Comm'r of SSA</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of [claimant's] treating physicians, which

were permissibly discounted.”). In contrast to Dr. Eargle, Dr. Canty concluded that plaintiff could tolerate “a few workers and supervisors in a fairly quiet setting” and her “emotional symptoms, such as they are, would not interfere with her ability to attend work.” AT 517. Dr. Canty also concluded that plaintiff could do “simple, nonpublic work.” AT 517.

Plaintiff’s next argument concerns Dr. Christine Fernando, who saw plaintiff in 2012 for a consultative examination and found that she had certain physical limitations, e.g., postural restrictions, a need to avoid climbing ladders, and occasional manipulative limitations. AT 461. Plaintiff argues that the ALJ ignored two of Dr. Fernando’s findings: her limitation of occasional manipulation and her finding of degenerative disc disease. However, the ALJ did not rely exclusively on Dr. Fernando, but on Dr. Eargle and Dr. Canty, as well as the state agency review physicians. AT 27. As above, the ALJ was not required to accept wholesale Dr. Fernando’s assessment of plaintiff’s limitations, either in questioning the vocational expert or in determining plaintiff’s residual functional capacity. See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (“It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains ‘substantial evidence.’”).

Here, the hypotheticals posed to the vocational expert by the ALJ included limitations that were properly assessed and supported by the record. The court finds no error in the determination of residual functional capacity.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff’s motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner’s cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: June 29, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 kent1136.ssi.ckd